IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SCOTT EMERSON FELIX,

    Petitioner,

  v.

SHERIFF MICHAEL HENNESSEY,
Warden

    Respondent.
                                     /

No. C 01-03138 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS HABEAS PETITION**

## INTRODUCTION

This is a motion to dismiss a petition for writ of habeas corpus. For following reasons, the motion is **GRANTED** as to claims 1–3 and 5–9 and **DENIED** as to claim 4.

## STATEMENT

In December 1982, petitioner Scott Emerson Felix was convicted of rape, assault with intent to commit rape, two counts of forcible oral copulation, and three counts of false imprisonment. The trial court sentenced petitioner to nineteen years and four months in prison. In December 1993, petitioner was paroled. In March 1996, petitioner's parole was revoked for violating a no-alcohol condition, and he was returned to custody for nine months.

Prior to petitioner's scheduled release in November 1996, the San Francisco district attorney filed a petition to have petitioner declared a sexually violent predator pursuant to California Welfare and Institutions Code Section 6600, the Sexually Violent Predator Act. Petitioner was brought to court on the petition for commitment on December 17, 1996, but the probable cause hearing did not begin until February 18, 1997.

Trial on the petition began in January 1998. In February 1998, the trial court declared a mistrial because the jury was unable to reach a unanimous verdict on whether petitioner qualified as a sexually violent predator. On retrial in July 1998, another jury found that petitioner was a sexually violent predator. The trial court committed petitioner to the Department of Mental Health for two years.

In February 2000, the California Court of Appeal affirmed the judgment. In May 2000, the California Supreme Court denied review. Petitioner subsequently filed numerous *pro se* habeas corpus petitions in the state courts. In August 2001, petitioner filed his original federal habeas corpus petition in this action, stating fifteen claims. Because the petition contained both exhausted and unexhausted claims, a September 17, 2001, order stayed it to allow petitioner an opportunity to exhaust the unexhausted claims.

In October 2001, petitioner filed an amended petition in this action restating the first six of the fifteen claims previously pleaded. Thereafter, petitioner was given multiple additional opportunities to perfect his claims in light of his *pro se* status. In documents filed in July and September 2004, respectively, petitioner alleged that he had exhausted all of his claims through state habeas petition No. S124168, which was filed in the California Supreme Court in April 2004. The California Supreme Court had summarily denied this petition in a one-sentence *en banc* decision issued in May 2004.

Following a renewed petition filed on June 12, 2004, this Court granted petitioner leave to amend in an order dated August 16, 2004. The order instructed as follows (emphasis added):

> Petitioner filed a petition and an amended petition, neither of which clearly set out the issues he wishes to raise here, and which he contends are now fully exhausted. His [appeal] refers to various issues [which are not] properly the subject of a habeas petition. In view of the confusion, petitioner shall file an amended petition which clearly sets out the claims he is making, in short, simple form. He may discuss his arguments regarding these issues in a supporting memorandum of points and authorities, but the petition itself should contain a list of issues . . . and a brief statement of the essential facts regarding each issue . . . . *Under no circumstances may petitioner incorporate previous filings into his amended petition by reference.*

2

Petitioner subsequently obtained counsel. In December 2007, petitioner's counsel filed an amended petition. The amended petition asserted nine claims.

Respondent moved to dismiss the petition, and a prior order granted that motion on the grounds that the petition and claims asserted were untimely. When petitioner moved for a certificate of appealability, however, an error in the order of dismissal was discovered (Dkt. No. 58). In fact, the exhausted claims in the original federal petition were *not* untimely, because they were never dismissed before the case was stayed under the "stay and abeyance" procedure (*see* Dkt. Nos. 3, 5, 14). *See, e.g., Robbins v. Carey*, 481 F.3d 1143, 1148 (9th Cir. 2007) (describing the procedure). As a result, the exhausted claims in the original petition had been continuously pending before the Court since the filing of the original (timely) petition on August 14, 2001.

Briefing was invited regarding whether the Court had jurisdiction to reconsider the order of dismissal or whether the parties should ask the Court of Appeals to vacate the judgment and remand the case for further proceedings.

This order finds that the Court has jurisdiction to reconsider the order of dismissal. 28 U.S.C. 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (issuance of a COA is a "jurisdictional prerequisite" to appeal of a habeas petition). It makes sense that errors should be corrected before appeal is taken, thus more promptly resolving the merits of habeas petitions and serving judicial economy.

This order goes on to reconsider the respondent's previous motion to dismiss the petition. Respondent does not attack Claim 4. Claims 1–3 and 6–9 are attacked on the ground that they are unexhausted. Respondent attacks claims 1 and 5–8 on the ground that they do not present a federal question. The motion to dismiss will be granted in part and denied in part for the following reasons.

**ANALYSIS**

**A. Exhaustion**

Federal courts may not grant habeas relief to a state prisoner unless the petitioner has first exhausted his or her state remedies. *Picard v. Connor*, 404 U.S. 270, 276 (1971). The

3

burden of alleging exhaustion lies with the prisoner *qua* petitioner. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). In the interest of comity and the desire to protect the state courts' role in the enforcement of federal law, "exhaustion typically requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, a petitioner may satisfy the exhaustion requirement by fully and fairly presenting each claim to the highest state court. A full and fair presentation will set forth the factual and legal basis for each claim. This requires a petitioner to provide "the substance of his or her claims, which includes a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (*per curiam*).

Respondent asserts that petitioner has not exhausted claims 1–3 of the amended petition. In its briefing, respondent maintains that these three claims were raised only in the California Court of Appeal, not the California Supreme Court. Respondent argues that this was insufficient to exhaust petitioner's claims. Petitioner neither argues to the contrary nor explains how these three claims were exhausted before the state's highest court. It is well-established that a petitioner must fairly present each of his claims before a state's highest court before they are exhausted. *O'Sullivan v. Boerckel*, 526 U.S. at 845–47. A claim cannot be fairly presented if it is not presented at all. Accordingly, federal habeas review is not appropriate for claims 1–3. *See Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).

Respondent concedes that claims 4–5 are exhausted. The exhaustion dispute as to the remainder of petitioner's claims, namely claims 6–9, centers on the petition filed in the California Supreme Court in April 2004. Respondent's attack against claims 6–9 is premised on the argument that these claims were not *fairly presented* to the state's highest court. While petitioner has made a great number of filings with state courts at all levels, these claims only traveled to the California Supreme Court on one occasion. As such, the success of these claims in the current petition depends on whether or not the April 2004 petition fairly presented them to the California Supreme Court.

4

In *Baldwin v. Reese*, 541 U.S. 27, 31 (2004), the Supreme Court held that the "fair presentation" standard required a petitioner to do more than provide a court with an abstract "opportunity" to evaluate the claims in a petition.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal". . . . We consequently hold that ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

*Id.* at 32. The Ninth Circuit has held that a federal constitutional issue must be brought before a court within the four corners of its briefing in order to fairly present a claim. *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).

Far from identifying a federal constitutional issue, the April 2004 petition could not have alerted a court to the existence of a claim of any kind. The petition merely "reincorporated" a laundry list of prior court filings, exhibits, and attachments without tendering a single factual or legal reference. The issue certainly was not brought before the California Supreme Court within the four corners of the briefing.

It is clear from the California Supreme Court's terse opinion that the April 2004 petition was denied on procedural grounds for failure to fairly present its claims. The opinion stated in its entirety as follows: "[p]etition for writ of habeas corpus is DENIED. (See *In re Clark* (1993) 5 Cal.4th 750)." In turn, *Clark* held as follows:

> As is apparent from a review of the above claims and the history of this case, many of the grounds asserted for relief are restatements or reformulations of arguments made and rejected on appeal or in the prior habeas corpus petition, while others are claims that could and should have been made on appeal. To the extent that new grounds for relief are stated, the petition fails to demonstrate that these claims could not have been asserted in the prior petition, or that any of the claims could not have been presented by a petition filed in conjunction with the appeal.

*Id.* at 763. While there are exceptions to the procedural limitations on habeas claims, none here applies. In *Chambers v. McDaniel*, 549 F.3d 1191, 1196 (9th Cir. 2008), the Ninth Circuit held that the denial of a habeas petition, which was brought for the first and only time in a procedural context in which its merits were not considered, did not satisfy the prerequisites for exhaustion.

5

The California Supreme Court petition contained no factual or legal assertions and was denied on procedural grounds. As a result, claims 6–9 were not fairly presented and were not exhausted in state courts.

In sum, claims 1–3 and 6–9 are unexhausted, and claims 4–5 are exhausted.

### B. Federal Question

The parties dispute whether or not many of the claims brought by petitioner address a federal question. 28 U.S.C. 2254(a) provides that federal habeas relief is available where a claim involves a violation of the Constitution, laws, or treaties of the United States. Federal habeas review is solely appropriate for cases requiring the construction or application of federal law — federal habeas relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Respondent does not contest petitioner's assertion that claims 2, 3, 4, and 9 raise federal questions. This portion of the order therefore only considers claims 1 and 5–8. Although this order has found that each of these except for claim 5 are unexhausted, this order also examines, in the alternative, whether each states a federal question.

Petitioner divides claim 1 into two sub-parts. The second part of claim 1, which relates to ineffective assistance of counsel, is indistinguishable from claim 9. Respondent concedes that claim 9 involves a federal question. The first part of claim 1 concerns the admissibility of "stalking" evidence. Petitioner's own briefing recognizes that "state evidentiary standards" govern such evidence. This part of claim 1 is therefore not a candidate for federal habeas review.

In claim 5, petitioner asserts that his "due process rights to timely hearings" were violated because the probable cause hearing for his involuntary commitment under the Section 6601 of the California Welfare and Institutions Code was untimely. Petitions may be filed to have a person committed under Section 6601 if it appears likely that the person will engage in sexually violent predatory criminal behavior upon release from prison. A state judge must review such petitions to determine whether they support a finding of probable cause. If the judge determines that probable cause exists, the judge must order that person to be detained in a

6

1 secure facility until a hearing thereon can be completed. Section 6601 further provides that the
2 probable cause hearing must commence not more than ten calendar days after the judge issues
3 the corresponding order.

4 Petitioner contends that the district attorney missed the mandatory statutory deadline set
5 forth in Section 6601 because the commitment petition was filed on December 17, 1996, and his
6 hearing did not commence until February 18, 1997. Petitioner's brief appears to confuse the
7 filing date of the petition and the issue date of the judicial order. Assuming, *arguendo*, that
8 petitioner's hearing passed the deadline imposed by the California statute by over two months,
9 however, claim 5 nonetheless fails to state a federal question.

10 The SVPA is a California statute. Petitioner makes no attempt to explain how a
11 violation of a state scheduling law would automatically implicate the violation of a federal
12 constitutional law. It is clear that a state statute which sets hearing deadlines does not
13 automatically lock in due process deadlines. States may, through legislation, create liberty
14 interests which, in turn, cannot be taken away in violation of due process; however, due process
15 protections arise only where the hardship imposed by such legislation is "atypical and
16 significant." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

17 In this case, petitioner asserts in claim 5 that the State's failure to adhere to its own
18 statute violated the United States Constitution. Petitioner's detention in anticipation of the
19 probable cause hearing on the SVPA petition, however, cannot be deemed an "atypical and
20 significant" hardship amounting to a constitutional violation. In *Barker v. Wingo*, 407 U.S. 514,
21 521–22 (1972), the Supreme Court drew an analogy between the right to a speedy trial and the
22 due process right. The decision explained that courts must examine the hardship imposed by
23 that delay, among other factors.

24 In the present case, petitioner was detained no more than roughly seventy days beyond
25 the hearing date. In *Stuard v. Stewart*, 401 F.3d 1064 (9th Cir. 2005), the Ninth Circuit
26 explained that the detainee's constitutional right to a speedy trial differed from a state-imposed
27 speedy trial rule. It held that:

28 > The constitutional rule imposes a flexible limit that is far longer
> than the Arizona rule in most or all cases. The Supreme Court in

7

> *Barker v. Wingo* held that "we cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." In *United States v. Aguirre*, we held that "a five year delay is long enough to trigger a further look," but concluded that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all the *Barker v. Wingo* factors were balanced.

*Id*. at 1068.

Petitioner has failed to establish that the relatively short delay of his probable cause hearing could be deemed constitutionally "atypical and significant." Petitioner has not shown how a delay measurable in terms of a few months could amount to a violation of his constitutional rights where a delay in terms of several years did not in *United States v. Aguirre*. He provides no authority establishing the contours of the alleged "due process rights to timely hearings" or suggesting that any such right was violated in this instance. The sole federal decision cited by petitioner, *Vitek v. Jones*, 445 U.S. 480 (1980), is inapposite. *Vitek* concerned the involuntary transfer of an inmate from a prison to a mental hospital for mandatory behavior modification. The prisoner's transfer, which was effected without a hearing, implicated due process because it involved a "massive curtailment of liberty." *Id.* at 490–491. Here, petitioner got a hearing. The short delay in giving him a hearing was not violative of *federal* due process even if the delay offended the *state* statute.

## CONCLUSION

Since 2001, petitioner has been through multiple rounds in this court and in state courts of all levels. This Court has afforded petitioner wide latitude in recognition of his status as a *pro se* litigant and numerous opportunities to cure the defects in his claims. Now, eight years and many leaves-to-amend later, all but two claims remain unexhausted. Only one of those, claim 4, presents a federal question. For the foregoing reasons, respondent's motion to dismiss is **GRANTED** without leave to amend as to claims 1–3 and 5–9. Claim 4 survives this motion.

As to Claim 4, respondent shall file and serve upon petitioner by **NOVEMBER 20, 2009**, an **ANSWER** conforming to Rule 5 of the Rules governing Section 2254 in the United States District Courts. Respondent shall, by that date, also serve all other materials required by Habeas Local Rule 2254-6(b). If petitioner wishes to respond to the answer, he shall file a

**TRAVERSE** with the Court and serve it upon respondent **WITHIN THIRTY DAYS OF SERVICE OF THE ANSWER**.

**IT IS SO ORDERED.**

Dated: September 21, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE